**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re: | |
|---|---|
| U.S. STEEL CANADA INC., <br><br> Debtor in a foreign proceeding. | **FOR PUBLICATION** <br><br> Case No. 17-11519 (MG) <br> Chapter 15 |

**MEMORANDUM OPINION GRANTING RECOGNITION OF THE FOREIGN MAIN PROCEEDING, THE FOREIGN REPRESENTATIVE, THE SANCTION ORDER, AND RELATED RELIEF**

*A P P E A R A N C E S:*

WEIL GOTSHAL & MANGES, LLP
*Attorneys for the Foreign Representative*
767 Fifth Avenue
New York, NY 10153
By: Robert J. Lemons, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

U.S. Steel Canada Inc. ("USSC") filed this chapter 15 case on June 2, 2017 (the "Petition Date"), seeking recognition in this Court of its Canadian CCAA Proceeding as a foreign main proceeding, and seeking recognition and enforcement in the United States of the Sanction Order, the Plan, and related orders, approved by the Canadian Court (all defined below). No objections were filed in this Court to any of the requested relief. Following a hearing on June 29, 2017, the Court entered an order granting all of the requested relief. (ECF Doc. # 12.) This Opinion explains the basis for the Court's ruling.

The relevant pleadings in this Court include the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, (III) Recognition of Sanction Order, and (IV) Related Relief* (ECF Doc. # 2) (the "Verified Petition" and, together with the form chapter 15 petition (ECF Doc. #1), the "Petition"). USSC filed the Petition in its

capacity as foreign representative, authorized by the Ontario Superior Court of Justice in Ontario, Canada (the "Canadian Court") to seek recognition of the reorganization proceeding in Canada (the "CCAA Proceeding") under the Companies' Creditors Arrangement Act (the "CCAA"). The Petition sought an order from this Court (i) granting the Petition and recognizing the CCAA Proceeding as a foreign main proceeding under sections 1517 and 1520 of the Bankruptcy Code; (ii) recognizing USSC as the foreign representative; and (iii) granting recognition of an order sanctioning a reorganization plan and related transactions approved by the Canadian Court in the CCAA Proceeding (the "Sanction Order"). The Petition includes a supporting memorandum of law and draws additional support from the declarations of William Aziz (the "Aziz Declaration," ECF Doc. # 3) and James D. Gage (the "Gage Declaration," ECF Doc. # 4). The Aziz Declaration was supplemented with a copy of the Sanction Order (the "Aziz Declaration II," ECF Doc. # 9) and then supplemented once more (the "Aziz Declaration III," ECF Doc. # 14).

## I. BACKGROUND

### A. USSC's Business Operations

USSC is wholly and indirectly owned by United States Steel Corporation ("U.S. Steel"), an integrated steel producer organized under Delaware law and headquartered in Pittsburgh, Pennsylvania. (Aziz Decl. ¶ 6.) U.S. Steel is among the largest producers of steel in North America and contributes significantly to the global steel market. (*Id.*) USSC was acquired by U.S. Steel in October 2007 (the "Acquisition") and serves as U.S. Steel's Canadian subsidiary. (*Id.*) USSC principally operates from its Lake Erie Works facility (the "Lake Erie Facility") and Hamilton Works facility (the "Hamilton Facility"). (*Id.*)

The Lake Erie Facility is situated along the shores of Lake Erie near Nanticoke, Ontario on a 6,600-acre industrial parcel. (*Id.* ¶ 7.) The Lake Erie facility carries out a number of

processes, including: (i) the baking of coal in coke ovens in order to convert it to coke ("coke making"); (ii) combining the coke with iron ore and limestone in a blast furnace ("iron making"); (iii) combining the iron with scrap metal and injecting it with oxygen to form liquid steel, which is solidified into slabs ("steel making"); and (iv) the hot rolling of steel slabs into sheets, then into coils ("finishing"). (*Id.*) USSC sells its products at various stages of finish throughout the production process. (*Id.* ¶ 8.) A great number of hot rolled coils, however, are shipped to the Hamilton Facility to undergo further finishing before they are ready for sale. (*Id.*)

The Hamilton Facility is located along the Hamilton Harbor and is approximately 810 acres in size. (*Id.* ¶ 9.) The Hamilton Facility's operations consist of coke ovens and finishing lines, including a cold reduction mill (which forms hot rolled steel into thinner gauges of steel for end customer use, *i.e.*, "cold-rolled steel") and two galvanizing lines (which add zinc to the cold-rolled steel). (*Id.* ¶ 10.) Like the Lake Erie Facility, the Hamilton Facility's products fall into different stages of finish depending on the purpose for which those products will be used. (*Id.* ¶ 11.)

### B.    Financial Instability

Shortly after the Acquisition, the 2008 financial crisis hit. (*Id.* ¶ 16.) USSC's financial stability and the stability of the steel market in general were compromised. (*Id.*) Additionally, the reduction of manufacturing in Canada and the increase in imports entering the Canadian market had a negative impact on USSC's business. (*Id.*) Labor disputes, the idling of production at the Lake Erie Facility and the Hamilton Facility, and post-retirement obligations further compounded USSC's financial difficulties. (*Id.* ¶¶ 17–19.) Under such financial hardship, USSC found itself unable to make full interest payments under a term loan agreement and ceased interest payments altogether under an amended revolver loan. (*Id.* ¶ 19.) USSC filed the CCAA Proceeding on September 16, 2014 ("Filing Date"). (*Id.* ¶ 20.)

3

### C. USSC's Outstanding Funded Indebtedness

As of the Filing Date, USSC's outstanding funded indebtedness under the Amended Revolver Loan, the Term Loan Agreement, and the Province Loan (all defined below) totaled approximately CAD $2.0 billion and approximately USD $193.1 million. (*Id.* ¶ 12.)

#### 1. *The Amended Revolver Loan*

On May 11, 2010, U.S. Steel Holdings, Inc. ("USS Holdings"), a subsidiary of U.S. Steel, and USSC, entered into a USD $600 million revolving loan facility (the "Amended Revolver Loan") that matures on May 11, 2025. (*Id.* ¶ 13.) As of the Filing Date, USSC owed USD $193.1 million under the Amended Revolver Loan, including accrued and unpaid interest. (*Id.*)

#### 2. *The Term Loan Agreement*

On October 29, 2007, 1344972 Alberta ULC (a wholly-owned subsidiary of U.S. Steel that merged with a predecessor of USSC in December 2007) and U.S. Steel Canada Limited Partnership LP ("USSC LP") (the direct parent of USSC) entered into a CAD $1.5 billion unsecured loan (the "Term Loan Agreement") that matures on October 31, 2037. (*Id.* ¶ 14.) The outstanding debt under the Term Loan Agreement was CAD $1.85 billion plus accrued and unpaid interest as of the Filing Date. (*Id.*)

#### 3. *The Province Loan*

On March 31, 2006, the Province of Ontario made a loan to USSC (the "Province Loan Agreement") that is due on December 31, 2015 (the "Province Loan"). (*Id.* ¶ 15.) The Province Loan bears interest at 1% per annum, payable semi-annually. (*Id.*) The outstanding balance on the Province Loan, including accrued and unpaid interest, was approximately CAD $150.7 million on the Filing Date.

### D. Initiation of the CCAA Proceeding

USSC filed the CCAA Proceeding, seeking protection by the Canadian Court pursuant to the CCAA. (*Id.* ¶ 20.) On September 16, 2014, the Canadian Court granted the relief requested and entered an order appointing Ernst & Young Inc. as monitor of USSC in the CCAA Proceeding (the "Monitor"). (*Id.*) The Debtor also retained Rothschild Inc. to advise USSC through the restructuring process. (*Id.*)

On October 8, 2014, the Canadian Court approved debtor-in-possession ("DIP") financing for USSC in the CCAA Proceeding. (*Id.* ¶ 23.) Under the current amended and restated interim financing term sheet dated as of November 4, 2015 (the "DIP Agreement," and the credit facility arising thereunder, the "DIP Facility") between USSC and Brookfield Capital Partners Ltd., USSC obtained access to CAD $30 million for working capital and other corporate purposes, and to make payments necessary to comply with the Initial Order, to provide guarantees supporting the operations of the business, and to pay interest and other expenses under the DIP Facility. (*Id.*) The DIP Facility includes an exit fee of CAD $3 million, as well as a monthly monitoring fee of approximately CAD $30,000. (*Id.*) USSC has not drawn on the DIP Facility. (*Id.*)

### E. The Transaction and the Plan

#### 1. Preceding Events and the SISP

After a 2015 sale and restructuring process (the "SARP") authorized by the Canadian Court failed, USSC held discussions with each of its significant stakeholders about a further sale and investment solicitation process (the "SISP"). (*Id.* ¶¶ 21–22.) The Canadian Court issued an order on January 12, 2016, approving the SISP and authorizing USSC "to market its assets for sale or to solicit an external capital injection." (*Id.* ¶ 22.) Bedrock Industries L.P. and Bedrock Industries Canada LLC (together, "Bedrock") emerged from the marketing process with the most

5

competitive bid (*id.*), resulting in the execution of a plan sponsor agreement (as amended, the "Plan Sponsor Agreement"). (*Id.* at 25.)

    2.    *The Transaction*

If successfully completed, the transaction contemplated by the Plan Sponsor Agreement (the "Transaction")[1] will be implemented pursuant to a plan of compromise, arrangement and reorganization compliant with the CCAA, the Canada Business Corporations Act, and various agreements with stakeholders that are conditions to implementation. (*Id.*) The Transaction will result in the transfer of ownership of USSC to Bedrock and the emergence of a restructured USSC. (*Id.*)

In broad terms, the Transaction will provide for the following:

    a) Bedrock will acquire all of USSC's shares from U.S. Steel;

    b) The secured claims of U.S. Steel against USSC will be paid in full, including all accrued and unpaid interest, and the unsecured claims of U.S. Steel shall be discharged and cancelled for nominal consideration;

    c) U.S. Steel will continue to provide certain transition and business services to USSC;

    d) USSC will commit to purchasing all of its iron ore requirements from U.S. Steel through 2021;

    e) USSC will commit to pay various amounts to fund its five main registered pension plans (the "Pension Plans"), with certain of such funding guaranteed by Bedrock;

    f) USSC will commit to pay various amounts to newly-established employee life and health benefit trusts (the "OPEB Vehicles") on account of legacy post-retirement non-pension benefit obligations ("OPEBs") of USSC;

---

[1]    On December 9, 2016, USSC also entered into an agreement with the Province, under which the Province agreed to support the Transaction (the "Province Support Agreement"). (*Id.* ¶ 25.)

    g) USSC will transfer all of its land assets to a special purpose entity (the "Land Vehicle") to be held for the benefit of the Pension Plans and OPEB Vehicles;

    h) the Province will receive USD $61 million in consideration of a release of certain environmental liabilities relating to USSC's land;

    i) the Province will provide secured loans to the Land Vehicle, the OPEB Vehicles, and USSC;

    j) Bedrock will make available to USSC a revolving asset-based lending facility in an amount of at least CAD $125 million to fund the closing costs of the Transaction and the cost of exiting the CCAA Proceeding; and

    k) The parties that consist of: (a) USSC, (b) U.S. Steel, (c) the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW"), including certain of its local unions representing members employed by USSC (the "Locals"), (d) the court-appointed representatives of the non-USW employees and retirees of USSC and their counsel (the "Salaried Representatives"), and the Province, among others, will exchange contractual releases, and the Sanction Order provides further releases in favor of USSC, U.S. Steel, and their affiliates and representatives.

(*Id.* ¶ 26.)

    3.    *Approval of the Plan*

On April 27, 2017, in furtherance of USSC's goal of consummating the Transaction under the reorganization plan sanctioned by the Canada Court (as amended, the "Plan"), USSC held a separate meeting for each of the two classes of creditors, as required under the CCAA. (*Id.* ¶ 34.) The holders of claims in each class voted overwhelmingly in favor of the Plan. (*Id.*) With respect to the meeting of the class of General Unsecured Creditors ("GUCs"), 95.79% of the votes by number and 95.33% of the votes by value voted in favor of the Plan. (*Id.* ¶ 35.) With respect to the Salaried Employees, 99.93% of the votes by number and 99.94% of the votes by value voted in favor of the Plan. (*Id.*)

7

The Plan sets out a number of conditions precedent to the effectiveness of the Plan, including, among others, the following:

a) the [Plan] will have been approved by each class of affected creditors;

b) the Sanction Order[2] will have been issued by the Canadian Court;

c) the applicable appeal periods with respect to the Sanction Order will have run;

d) *the Sanction Order will have been recognized and given full force and effect in the United States by an order of the U.S. Bankruptcy Court in a chapter 15 proceeding*;

e) Bedrock will have paid to the Debtor the Plan Funding Amount (defined as the amount required, in excess of cash on hand, to fund the General Unsecured Creditor Pool and the Unresolved Claims Reserve, and to fund other payments by the Debtor so to leave the Debtor with no less than CAD $5 million in cash immediately after the effective date of the [Plan]).

(*Id.* ¶ 36 (emphasis added).) As emphasized above, effectiveness of the confirmed Plan required that the Sanction Order be given full force and effect in the United States by an order of a Bankruptcy Court in a chapter 15 proceeding. USSC also reserved the right to further amend the Plan with the consent of the relevant parties and the Monitor and subject to the restrictions set forth therein. (*Id.* ¶ 38.)

### F. USSC's Additional Obligations

In addition to those terms contemplated by the Plan and the Transaction, USSC bears obligations under various intercompany services agreements with U.S. Steel which are governed by Delaware and Pennsylvania law. (Aziz Decl. III ¶ 6.) Those agreements are outlined below:

---

[2] Terms not defined herein shall have the definitions ascribed to them in the Information Circular, with Respect to a Plan of Compromise, Arrangement, and Reorganization (the "Plan Circular"), attached to the Aziz Declaration as Exhibit 4, and the Plan, which is attached to the Plan Circular as Exhibit B.

8

a) *Corporate Services Agreement* between U.S. Steel and USSC dated November 1, 2007 whereby U.S. Steel provided a wide variety of corporate services to USSC including cash management, operational, employee management, tax, IT and financial services, corporate strategic planning and other services. The agreement is governed by the laws of the State of Pennsylvania.

b) *ERP Cost Sharing Agreement* between U.S. Steel and USSC, among others, dated as of November 19, 2009, whereby U.S. Steel and USSC agreed to share the cost of the Oracle cash management system that tracked cash transactions, purchase orders, receivables, disbursements and payables. The agreement is governed by the laws of the State of Delaware.

c) *Limited Risk Distributor Agreement* between U.S. Steel and USSC dated February 1, 2008, pursuant to which USSC purchased raw materials from U.S. Steel on an as-needed basis. The agreement is governed by the laws of the State of Pennsylvania.

d) *Marketing, Distributorship and Supply Agreement* between U.S. Steel and USSC dated December 1, 2009, which provides that U.S. Steel shall act as a distributor of USSC product sold within the United States. The agreement is governed by the laws of the State of Pennsylvania.

e) *Marketing, Distributorship and Supply Agreement* between U.S. Steel and USSC dated March 1, 2009, which governs sales by U.S. Steel to customers in Canada through a limited distribution division of USSC. The agreement is governed by the laws of the State of Pennsylvania.

f) *Business Services Agreement* between U.S. Steel, USSC, and U.S. Steel Kosice, s.r.o. ("USSK"), an indirect, wholly-owned Slovakian subsidiary of U.S. Steel, dated January 1, 2007, whereby USSK performs most of USSC's bank reconciliations. The agreement is governed by the laws of the State of Pennsylvania.

(*Id.* ¶ 6.) As of the Petition Date, USSC was also a party to a *Common Interest, Cooperation and Information Access Agreement* with U.S. Steel, governed by Delaware law, as well as indemnification agreements between U.S. Steel and USSC's three directors, governed by Pennsylvania law. (*Id.* ¶ 8.) Additionally, as of the Filing Date, USSC owed approximately

9

USD $193.1 million on a USD $600 million credit facility governed by Pennsylvania law and provided by USS Holdings, which, as noted above, is a subsidiary of U.S. Steel and is incorporated under Delaware law. (*Id.* ¶ 7; Aziz Declaration ¶ 13.)

### G. The Sanction Order

On May 26, 2017, the Canadian Court in the CCAA Proceeding entered an order authorizing USSC to act as a foreign representative in the CCAA Proceeding for the purposes of having that proceeding recognized in a jurisdiction outside of Canada, including to apply for recognition of the CCAA Proceeding in the United States pursuant to chapter 15 of the Bankruptcy Code (the "Authorizing Order"). (*See* Aziz Declaration, Exhibit 2; *id.* ¶ 3.)

On June 9, 2017, at a hearing before the Canadian Court (the "Sanction Hearing"), the Canadian Court approved and entered the Sanction Order. USSC and other parties in interest established June 30, 2017, as the target implementation date of the Plan and the closing of the Transaction contemplated therein. (Aziz Decl. II, Exhibit A; *id.* ¶ 5.)

## II. LEGAL STANDARD

### A. Recognition of a Foreign Main Proceeding under Section 1517(a)

Section 1517(a) of the Bankruptcy Code provides that the court shall, after notice and a hearing, enter an order recognizing a foreign main proceeding if:

> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding . . . within the meaning of section 1502;
>
> (2) the foreign representative applying for recognition is a person or body; and
>
> (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a). "While not explicit in this section, the foreign proceeding and the foreign representative must meet the definitional requirements set out in sections 101(23) and 101(24)." 8 COLLIER ON BANKRUPTCY ¶ 1517.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.

10

2017). Section 101(23) defines a foreign proceeding as a "collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23); *see also In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 327 (Bankr. D. Del. 2010).

A foreign main proceeding "shall be recognized . . . if it is pending in the country where the debtor has the center of its main interests" (its "COMI"). 11 U.S.C. § 1517(b)(1). The Bankruptcy Code presumes that "[i]n the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the [debtor's COMI]." *Id.* § 1516(c); *see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 130 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008). To determine a debtor's COMI, courts in this circuit look not only to the location of the debtor's registered office, but also consider a nonexclusive list of factors, including:

> "the location of the debtor's headquarters; the location of those who actually manage the debtor . . . ; the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes."

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013) (quoting *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)).

A foreign representative is "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). "Person" is defined under section 101(41) of the Bankruptcy Code to include an individual, partnership, or corporation. *Id.* § 101(41).

11

The Bankruptcy Code further provides that an order of recognition shall be entered if the foreign representative's petition meets the requirements of section 1515. *Id*. § 1517(a)(2)–(3). Section 1515 requires presentation of certain documents relating to the commencement, existence, and/or authorization of the foreign proceeding. *See id*. § 1515(b). The petition must also be accompanied by a statement identifying all known foreign proceedings with respect to the debtor, *id*. § 1515(c), and if applicable, a translation of the evidentiary materials into English. *Id*. § 1515(d).

### B.    Privileges Provided Pursuant to Chapter 15 of the Bankruptcy Code

Upon the grant of an order recognizing a proceeding as a foreign main proceeding, section 1520 of the Bankruptcy Code makes applicable the automatic stay under sections 361 and 362 regarding actions against property of the debtor within the territorial jurisdiction of the United States. *See id.* § 1520(a)(1). The statute specifically refers to "property of the debtor" and not "property of the estate," which is created under section 541(a) of the Bankruptcy Code. *Id.* In a chapter 15 proceeding, there is no "estate." Nevertheless, section 1520(a) imposes an automatic stay on the debtor's property located within the United States. *In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 864 n.48 (Bankr. C.D. Cal. 2008).[3]

Section 1521(a) outlines the discretionary relief a court may order upon recognition. *Id.* § 1521(a). The discretion that is granted is "exceedingly broad," since a court may grant "any appropriate relief" that would further the purposes of chapter 15 and protect the debtor's assets and the interests of creditors. Hon. Leif M. Clark, ANCILLARY AND OTHER CROSS-BORDER

---

[3] In addition to conferring the benefit of the automatic stay, section 1520(a) also applies sections 363, 549 and 552 of the Bankruptcy Code to any transfer of a debtor's interest in property within the same jurisdiction. *See* 11 U.S.C. § 1520(a)(2). It further empowers a foreign representative to operate a debtor's business by exercising the rights and powers of a trustee under sections 363 and 552, *id.* § 1520(a)(3), and it applies section 552 to property of the debtor that is within the territorial jurisdiction of the United States. *Id.* § 1520(a)(4).

12

INSOLVENCY CASES UNDER CHAPTER 15 OF THE BANKRUPTCY CODE, § 7[2], at 70 (2008). "[A]ny appropriate relief" may include "any additional relief that may be available to a trustee" that the Court determines is necessary to effectuate the purpose of chapter 15 and to protect the assets of the debtor or the interests of the creditors. 11 U.S.C. § 1521(a)(7). In the exercise of comity, which is a central tenet of a chapter 15 proceeding, appropriate relief under section 1521 may include recognizing and enforcing a foreign confirmation order. *See In re Rede Energia S.A.*, 515 B.R. 69, 89 (Bankr. S.D.N.Y. 2014); *see also In re Cell C Proprietary Ltd.*, Case No. 17-11735 (MG), 2017 WL 3190568, at *8 (Bankr. S.D.N.Y. July 27, 2017). Relief under section 1521 will be granted "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." *Rede Energia,* 515 B.R. at 90; *see also Cell C Proprietary Ltd.*, 2017 WL 3190568, at *8; 11 U.S.C. § 1522(a).

In addition to the types of relief enumerated in section 1521, section 1507(a) of the Bankruptcy Code provides that "[s]ubject to the specific limitations stated elsewhere in this chapter[,] the court, if recognition is granted, may provide additional assistance to a foreign representative under this title or under other laws of the United States." *Id.* § 1507(a). "Pursuant to section 1507, the court is authorized to grant any 'additional assistance' available under the Bankruptcy Code or under 'other laws of the United States,' provided that such assistance is consistent with the principles of comity and satisfies the fairness considerations set forth in section 1507(b)." *Rede Energia*, 515 B.R. at 90. As with section 1521, relief under section 1507 may include recognition and enforcement of a plan approved by a foreign court. *Id.* at 94–95.

13

**C.      The Interplay of Section 109(a) and Chapter 15 of the Bankruptcy Code**

                *1.      Debtor Status in a Chapter 15 Proceeding Under* Barnet

Section 109(a) provides that "[n]otwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business or property in the United States, or a municipality, may be a debtor under this title." 11 U.S.C. § 109(a). The Second Circuit has applied the requirements enumerated in section 109(a) of the Bankruptcy Code to foreign debtors under chapter 15. *See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 247 (2d Cir. 2013). Accordingly, under section 109(a) and in accordance with *Barnet*, a foreign representative must show that the debtor has either (i) a domicile, (ii) a place of business, or (iii) *property* in the United States, as a condition precedent to eligibility under section 1517. *See Barnet*, 737 F.3d at 247; *In re Octaviar Admin. Pty. Ltd.*, 511 B.R. 361, 369 (Bankr. S.D.N.Y. 2014).

                *2.      Satisfaction of the Property Requirement*

Some courts, including this one, have held that an undrawn retainer in a United States bank account qualifies as property in satisfaction of section 109(a). *See, e.g.*, *Octaviar*, 511 B.R. at 372–73 ("There is a line of authority that supports the fact that prepetition deposits or retainers can supply 'property' sufficient to make a foreign debtor eligible to file in the United States.") (citing *In re Cenargo Int'l PLC*, 294 B.R. 571, 603 (Bankr. S.D.N.Y. 2003)); *see also In re Berau Capital Resources Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015) ("The Court is satisfied that the retainer provides a sufficient basis for eligibility in this case."); *In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 39 (Bankr. D. Del. 2000) (holding that a $400,000 retainer paid on behalf of the debtors to bankruptcy counsel in that case qualifies as sufficient property in the United States under section 109(a)).

14

Further, "[c]ontracts create property rights for the parties to the contract. A debtor's contract rights are intangible property of the debtor." *Berau Capital*, 540 B.R. at 83 (citing *U.S. Bank N.A. v. Am. Airlines, Inc.,* 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013), *aff'd,* 730 F.3d 88 (2d Cir. 2013)). Those property rights can be and typically are tied to the location of the governing law of the contract. *See id.* at 84 (holding that the situs of intangible property rights governed by New York law was New York). Accordingly, debt subject to a New York governing law clause and a New York forum selection clause constitutes property in the United States. *See In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016) ("[D]ollar-denominated debt subject to New York governing law and a New York forum selection clause is independently sufficient to form the basis for jurisdiction.") (citation omitted); *Berau Capital*, 540 B.R. at 84 ("The Court concludes that the presence of the New York choice of law and forum selection clauses in the Berau indenture satisfies the section 109(a) 'property in the United States' eligibility requirement.") (footnote omitted).

### III.    DISCUSSION

USSC, in its capacity as foreign representative authorized by the Canadian Court in the CCAA Proceeding, petitions this Court to grant recognition of the CCAA Proceeding as a foreign main proceeding and give full force and effect to the Sanction Order so that it may proceed with the Transaction contemplated by the Plan. As noted above, section 1517(a) of the Bankruptcy Code provides that "an order recognizing a foreign proceeding shall be entered if . . . (i) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (ii) the foreign representative applying for recognition is a person or body; and (iii) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a). The CCAA Proceeding qualifies as a foreign main proceeding under section 1502, USSC is a person or body qualified to act as the foreign

15

representative, and the required documents under 1515 have been satisfactorily provided to the Court. Additionally, recognition of the Sanction Order and related relief falls within the Court's discretionary power under sections 1507 and 1521. *See Cell C Proprietary Ltd.*, 2017 WL 3190568, at *8; *Rede Energia*, 515 B.R. at 92–95;.

### A.   USSC Has Property in the United States That Satisfies the Eligibility Requirement in Section 109(a)

Section 109(a) requires a foreign debtor to have either (i) a domicile, (ii) a place of business, or (iii) *property* in the United States. 11 U.S.C. § 109(a). *See Barnet*, 737 F.3d at 247; *Octaviar*, 511 B.R. at 369. Here, USSC does not satisfy the first two options: its domicile is in Canada and it does not have a place of business in the United States. However, USSC has property in the United States.

As explained above, courts in the Second Circuit and elsewhere recognize professional retainers as property under section 109. In this case, USSC has an undrawn $100,000 retainer paid to its U.S. counsel and held in a JP Morgan Chase Bank account located in New York, NY. (Aziz Decl. ¶ 42; Verified Petition ¶ 41.) USSC also has additional property in the United States, including approximately US $193.1 million in outstanding funded indebtedness (including accrued interest) under the Amended Revolver Loan, governed by Pennsylvania law. Furthermore, as set forth in the Aziz Declaration III, U.S. law governs a number of USSC's contractual obligations, including the requirement that U.S. Steel provide certain transition and business services to USSC, and requiring USSC to purchase all of its iron ore requirements from U.S. Steel through 2021.

### B.   The CCAA Proceeding is a Foreign Main Proceeding as Defined in Section 101(23)

"The CCAA provides for a court-supervised reorganization procedure designed to enable financially distressed companies to avoid foreclosure or seizure of assets while maximizing the

16

company's value as a going concern for the benefit of creditors and other parties in interest."
(Gage Decl. ¶ 15.) In a CCAA proceeding, absent exceptional circumstances, a debtor's management and board of directors remain in place. But the court also appoints a qualified monitor, who functions as an independent court officer and observer of the CCAA proceeding and of the debtor's business, and who monitors the company's ongoing operations, and reports to the court on any major events affecting the company. (*Id*. ¶¶ 17−18.)

Further, USSC's COMI is plainly in Canada. USSC (i) is incorporated in Canada; (ii) houses its registered office in Canada; (iii) undertakes all of its operations in Canada; (iv) generates all of its revenue in Canada; (v) has substantially all of its major customers in Canada; (vi) employs residents of Canada; (vii) pays payroll taxes solely to the Canadian government; and (vii) has all of its senior management in Canada. (Aziz Declaration ¶ 6; *id.* Exhibit 2 at 87; Verified Petition ¶ 53.) Accordingly, the CCAA Proceeding satisfies the requirements of a foreign main proceeding under the Bankruptcy Code.

This Court and others have recognized that a Canadian CCAA restructuring proceeding can constitute a "foreign proceeding." *See, e.g., In re Sino-Forest Corp.*, 501 B.R. 655 (Bankr. S.D.N.Y. 2013); *In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685 (Bankr. S.D.N.Y. 2010); *Collins v. Oilsands Quest Inc.*, 484 B.R. 593 (S.D.N.Y. 2012).

### C.   USSC is Qualified to be the Foreign Representative

The term "foreign representative" is defined under section 101(24) of the Bankruptcy Code as:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

17

11 U.S.C. § 101(24). Under section 101(41) of the Bankruptcy Code, the term "person" includes a corporation. Here, the Canadian Court has authorized USSC, a corporation, to act as foreign representative and to apply for recognition of the CCAA Proceeding in this Court pursuant to the Authorization Order. Accordingly, USSC is qualified to be the foreign representative.

### D. Granting the Relief Requested in the Petition Serves the Purposes of Chapter 15

Section 1508 of the Bankruptcy Code requires Courts to "consider [the] international origin [of chapter 15] and the need to promote an application of [chapter 15] that is consistent with the application of similar statues adopted by foreign justifications." 11 U.S.C. § 1508. USSC worked with the creditor body and outside parties, including governmental bodies, to negotiate a largely consensual Plan, which will take effect after the Transaction closes. The Plan has the overwhelming support of the creditor body and the Province of Ontario.

Recognition and enforcement of the Sanction Order and Plan in this chapter 15 proceeding are conditions precedent to the effectiveness of both. No objections were filed to the relief sought by the Petition. As explained above, in the exercise of comity, the Court has the authority to recognize and enforce the Sanction Order and the Plan. Based on the principles of international comity and in accordance with the requirements of the Bankruptcy Code, this Court will recognize and enforce the Sanction Order and the Plan.

[*Remainder of page intentionally left blank.*]

## IV. CONCLUSION

For the reasons discussed above, the Court previously granted recognition of the CCAA Proceeding as a foreign main proceeding, and recognized and enforced the Sanction Order and the Plan in the United States.

Dated:   July 31, 2017
         New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge